**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jimmie Gleason PEREZ, Charles Gleason Perez, Gilbert Leos Garcia and Pedro Jimenez Almaraz, Defendants-Appellants.**

**No. 74–4131.**

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1976.

Rehearing and Rehearing En Banc Denied April 27, 1976.

Ruben Montemayor, Harry A. Nass, Jr., San Antonio, Tex. (Court-appointed), for all defendants-appellants except Almaraz.

James R. Gillespie, San Antonio, Tex., for defendant-appellant Almaraz.

William S. Sessions, U. S. Atty., Joel D. Conant, Asst. U. S. Atty., San Antonio, Tex., Frank B. Walker, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendants appeal their conviction of possession of heroin with intention to distribute it in violation of 21 U.S.C.A. § 841(a)(1) and conspiracy to distribute heroin in contravention of 21 U.S.C.A. § 846. Additionally defendants Pedro Jimenez Almaraz and Jimmie Gleason Perez appeal from their conviction of aiding and abetting in the distribution of heroin in contravention of 18 U.S.C.A. § 2. Essentially the scheme was that the defendants would provide heroin to several minors who then sold the substance to undercover narcotics officers receiving in exchange money of which the serial numbers were recorded, which was subsequently found in the possession of the defendants. Also, a television with an electronic tracking device was bartered by the agents for heroin and was later found in an automobile driven by Almaraz at the time of his arrest. We affirm the convictions of all of the defendants.

### Pedro Jimenez Almaraz

This defendant urges primarily two points of error: (i) failure to suppress oral statements and physical evidence obtained at the time of his warrantless arrest made without probable cause and the warrantless search incidental to the arrest was in contravention of the Fourth Amendment, and (ii) that there was insufficient evidence to support his conviction.

### Probable Cause For Arrest

■ This Court[1] with ample basis from the Supreme Court holds that probable cause exists where "the facts and circumstances within [the arresting officers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Brinegar v. United States*, 1949, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890, *quoting from Carroll v. United States*, 1925, 267 U.S. 132, 167, 45 S.Ct. 280, 69 L.Ed. 543, 555; *accord Ker v. California*, 1963, 374 U.S. 23, 35, 83 S.Ct. 1623, 10 L.Ed.2d 726, 739; *Wong Sun v. United States*, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Draper v. United States*, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

■ We have no difficulty in determining that the facts within the knowledge of the officers at the time they arrested Almaraz provided an ample basis for a finding by the trial court that probable cause existed to conduct a warrantless arrest and search. At the motion to suppress hearing held earlier and at trial,[2] officer Cavalier testified that he observed Almaraz enter the residence at 329 Jean Street where narcotics transactions had occurred. R. II, 63. Further officer Cavalier observed Almaraz leave this address with defendant Jimmie Gleason Perez and Ms. Pena carrying a large object appearing to be the "bugged" television which had been exchanged for drugs by the agents, which he placed in his automobile. R. II, 64. Finally, he was tracked by police officers who followed the electronic bug placed in the television to the site of his arrest. R. II, 65, 70. The combination of these observations by Cavalier and the other arresting officer seems to us to warrant a reasonable suspicion that criminal activity was afoot.

### The Trojan Horse To Run Another Day

■ We need not at this time solve the riddle of whether an electronic "bug" installed in the television found in

---

1. *See, e. g., Conley v. Beto*, 5 Cir., 1972, 460 F.2d 210, 212; *Johnson v. Middlebrooks*, 5 Cir., 1967, 383 F.2d 386.

2. The testimony at the trial on the merits relating to the events leading to the arrest of Almaraz is primarily contained in the following excerpts: R. III, 18–93 (officer Lewis' testimony), R. III, 93–113 (officer Cavalier's testimony), R. III, 113–130 (officer Alonzo's testimony) and R. III, 130–154 (officer Cantu's testimony).

Almaraz's car at the time of his arrest which was bartered for drugs constituted a search within the strictures of the Fourth Amendment, for this issue was not presented on this appeal. Nevertheless, we distinguish the Court's opinion in the recently decided case of *United States v. Holmes*, 5 Cir., 1975, 521 F.2d 859, 864–67, now pending on rehearing en banc. There police officers surreptitiously placed an electronic tracking device on the defendant's vehicle while it was parked in a public parking lot. The Court in holding that this conduct by police officers constituted a warrantless search for which there existed no probable cause accurately stated the primary issue as "whether the government, in searching out information not otherwise available, invades an individual's 'right of personal security, personal liberty and private property', *Boyd v. United States*, 1886, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed.2d 746, 751, and violates 'the privacy upon which he justifiably relied'," *citing Katz v. United States*, 1967, 389 U.S. 347, '353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583.

Applying this standard to these facts we assume without deciding that a person who accepts an item of personal property in exchange for heroin has no reasonable expectation that it is cleansed of any device designed to uncover the tainted transaction or identify the parties. Surely, the trailing of a suspect by utilizing an electronic bug on moveable property constituting a direct part of the negotiated transaction seems no more objectionable than placing a "tail" on his movements or the recording of the serial numbers of money given in exchange for illegal contraband or the marking of property passed in such an exchange so that it can later be identified. Additionally, unlike *Holmes* where the bug was put on the defendant's vehicle then in the constructive possession of the defendant, the "bug" here was installed while the TV was in the rightful possession of the government agents.

Even assuming the Fourth Amendment to be applicable to these facts we believe probable cause is established by the officer's own observation of the exchange of heroin for this very television.

### *Sufficiency Of The Evidence And The Waiver Doctrine*

 With regard to the defendant's second contention we adhere to the well established, albeit criticized,[3] rule in the Fifth Circuit that when a defendant puts on evidence in his behalf after making a motion for acquittal under F.R.Crim.P. 29(a) he waives objection to the denial of that motion[4] unless he renews his mo-

---

**3.** *See, e. g., Cephus v. United States*, 1963, 117 U.S.App.D.C. 15, 324 F.2d 893, 895–97. The operation of the rule recognizes that the defendant in his case may bolster the prosecution's case by filling gaps which if left open would provide an insufficient basis for conviction. Critics of the rule contend that it places the defendant in the dilemma of whether to waive objection to the sufficiency of the prosecution's case by putting on evidence in his own behalf or to relinquish this right in hopes that his motion for judgment of acquittal will be granted either by the trial court, or if denied, by the appellate court on appeal. *See* Comment, *The Motion For Acquittal: A Neglected Safeguard*, 70 Yale L.J. 1151, 1160–63 (1963); *see also* 8 Moore's Federal Practice ¶ 29.05 (2d ed. 1975); Wright, *Federal Practice and Procedure*, ¶ 463 at 246–48 (1969).

A factor apparently little stressed is that this Court is now firmly wedded to the proposition that if, on appeal, we hold that the judgment of acquittal should have been granted we must remand with directions to dismiss unless a motion for new trial has been filed. *United States v. Apollo*, 5 Cir., 1973, 476 F.2d 156, 158; *United States v. Musquiz*, 5 Cir., 1971, 445 F.2d 963, 966; *United States v. Goodson*, 5 Cir., 1971, 439 F.2d 1056.

**4.** Fifth Circuit precedence supporting the waiver doctrine is replete. *See, e. g., United States v. Edwards*, 5 Cir., 1974, 488 F.2d 1154, 1158–59; *United States v. Jackson*, 5 Cir., 1971, 444 F.2d 1389; *United States v. Rawls*, 5 Cir., 1970, 421 F.2d 1285. Other Circuits follow suit. *See, e. g., United States v. Martinez*, 10 Cir., 1975, 514 F.2d 334; *United States v. Coblentz*, 2 Cir., 1972, 453 F.2d 503, *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116; *United States v. Lewis*, 9 Cir., 1970, 426 F.2d 266; *United States v. Dolleris*, 6 Cir., 1969, 408 F.2d 918, *cert. denied*, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461.

tion for judgment of acquittal at the close of all the evidence or his conviction would be manifestly unjust.[5] We find it without our power to extricate him from the "Jaws" of this rule for upon a search of the entire record we find sufficient evidence[6] to assure that his conviction was amply supported and would not result in a manifest miscarriage of justice.[7]

### Jimmie Gleason Perez and Charles Gleason Perez

 Having said what we have said thus far, we have no difficulty in rejecting these defendants' appeal as to the sufficiency of the evidence supporting their conviction. Once again we apply our two-tier test finding first that these

defendants failed adequately to preserve this ground of error because they made no motion for judgment of acquittal and secondly that their conviction did not result in any manifest injustice.[8]

### Gilbert Leos Garcia

 Although this defendant made a timely motion for judgment of acquittal[9] and unlike Almaraz did not waive his right to object to its denial by subsequently presenting evidence in his own behalf,[10] we nevertheless must cleave to the familiar rule that the jury's verdict must be upheld if supported by substantial evidence taking the view most favorable to the government. *See, e. g., Glas-*

5. Although Almaraz's counsel made motion for judgment of acquittal at the termination of the prosecution's case in chief, (R. III, 222–225) he failed to renew his motion after all the evidence had been received.

6. In addition to the observations of the officers as to Almaraz's suspicious conduct prior to his arrest which is set out above, see footnote 2, *supra* and accompanying text, there was the testimony of Ms. Pena that Jimmie Gleason Perez, and another defendant, had told her that Almaraz was supplying him with heroin. R. III, 184–89, 202–03. She testified she observed Almaraz passing a match box to Jimmie Gleason Perez in exchange for money and that Perez later told her that match box contained heroin. *Id.* In response to Perez's telephone call Almaraz came to pick up the television given in exchange for heroin by government agents. R. III, 209. We do not reach the issue of whether some of this testimony is hearsay, or if it is, whether it falls under any of the recognized hearsay exceptions because this issue is not presented to us on appeal.

Moreover, agent Lewis testified that marked money given in exchange for heroin was found in the possession of Almaraz as well as the other defendants. R. III, 46–47, 132, 158. We are satisfied that this evidence, when considered as a whole, indicates that no manifest injustice resulted from Almaraz's conviction.

7. In the Fifth Circuit it is well established that in the absence of a timely motion for judgment of acquittal, the question of the sufficiency of the evidence is not presented for appellate review unless to deny the appeal of this issue would foster a manifest miscarriage of justice. *See United States v. Edwards, supra,* at 1158–.59; *United States v. Jones,* 5 Cir., 1973, 486 F.2d 1081, 1082–83; *United States v. Wendt,* 5 Cir., 1972, 463 F.2d 202; *United States v. McGlamory,* 5 Cir., 1971, 441 F.2d 130; *United*

States v. Andrews, 5 Cir., 1970, 431 F.2d 952; *United States v. Penner,* 5 Cir., 1970, 425 F.2d 729, 730; *Fitzpatrick v. United States,* 5 Cir., 1969, 410 F.2d 513; *Smith v. United States,* 5 Cir., 1968, 403 F.2d 689; *Sheffield v. United States,* 5 Cir., 1967, 381 F.2d 721; *Meeks v. United States,* 5 Cir., 1958, 259 F.2d 328; *Moomaw v. United States,* 5 Cir., 1955, 220 F.2d 589; *Knight v. United States,* 5 Cir., 1954, 213 F.2d 699, 700; *Moore v. United States,* 5 Cir., 1947, 161 F.2d 932; *Colt v. United States,* 5 Cir., 1947, 160 F.2d 650; *Jordon v. United States,* 5 Cir., 1941, 120 F.2d 65.

8. There is a substantial amount of evidence supporting the conviction of Jimmie Gleason Perez. In addition to his participation in the narcotics transactions with Almaraz which is described above, see note 6, *supra,* and accompanying text, there was evidence presented by the government which placed him at 329 Jean Street at the time of the execution of the search warrant. On that occasion he was caught in the act of preparing heroin for sale along with Charles Gleason Perez and others. R. III, 51–54, 134–36, 145, 147, 149–50, 156–57, 164, 167. Furthermore, Jaime Gleason Torres and Oscar Torres Carejo after being granted immunity testified that they had received heroin from Jimmie Gleason Perez which they resold to officer Lewis. R. III, 219–22 (Torres' testimony); R. III, 177–78, 180 (Carejo's testimony).

9. R. III, 225 *et seq.*

10. Garcia's counsel recalled officer Lewis, who was the primary government witness,. after he had presented his motion for judgment of acquittal, but we believe this falls more into the category of continued cross-examination than evidence presented in the defendant's behalf and accordingly hold the waiver doctrine inapplicable.

*ser v. United States*, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; *United States v. Stephenson*, 5 Cir., 1973, 474 F.2d 1353. Upon our review of the record we find ample evidence to meet this standard.[11]

### Competency Of Witnesses

 Finally, defendants Jimmie Gleason Perez, Charles Gleason Perez, and Gilbert Leos Garcia challenge on appeal the competency as witnesses of Jaime Gleason Torres, Oscar Torres Carejo and Joyce Ann Pena who were minors testifying for the government. Although no objection was made to the admission of this evidence by defense counsel, we prefer not to base our holding entirely on the defendant's failure to preserve this issue for appeal since a total lack of competency of all of these critical witnesses could result in a lack of competent evidence to support the verdict. *See United States v. Schoefield*, 1972, 150 U.S.App.D.C. 380, 465 F.2d 560, 562 n. 11, *cert. denied*, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136. Therefore, we proceed to the merits of the claim.

We are mindful that the competency of witnesses should be left to the sound discretion of the trial judge, see *Wheeler v. United States*, 1895, 159 U.S. 523, 524–25, 16 S.Ct. 93, 94, 40 L.Ed. 244, 245–47; *United States v. Jones*, 1973, 157 U.S.App.D.C. 158, 482 F.2d 747, 751; *United States v. Schoefield, supra*; *United States v. Hardin*, 1970, 143 U.S.App.D.C. 320, 443 F.2d 735, 737; *Pocatello v. United States*, 9 Cir., 1968, 394 F.2d 115, and thus we find appealing the test for competency of children which was formulated by the D.C. Circuit in *Schoefield*:

The ultimate test of competence of a young child is whether he has the requisite intelligence and mental capacity

to understand, recall and narrate his impressions of an occurrence. The decision of the trial judge may not be upset on appeal unless clearly erroneous. [Footnotes omitted]. *See also* McCormick, *On Evidence*, § 62 at 140 (2d ed. 1972).

This transcript as a whole reflects that the children who were witnesses comprehended the questions asked and responded with intelligible answers. *See United States v. Schoefield, supra*, at 562. Accordingly, we find no merit in the claim that the trial judge was clearly erroneous either in proceeding without a preliminary voir dire or in accepting the testimony of the children.

Affirmed.

---

11. Evidence probative of Garcia's guilt came in several times during the trial. For example officer Lewis testified that Garcia had been found at 329 Jean Street when the officers made their narcotics raid on April 11, 1974. R. III, 54. Officer Cantu testified on that occasion that he observed Garcia helping Charles Gleason Perez prepare heroin for sale, (R. III, 134–36, 145, 147, 149–50) and this testimony was corroborated by the testimony of officer Losoya who was also present when the search warrant was executed. R. III, 156–57, 164, 167.