UNITED STATES of America, Plaintiff-Appellee,

v.

Monty Edward CLAYBORNE, Jr. and George Ingram, Defendants-Appellants.

Nos. 77–1568, 77–1570.

United States Court of Appeals, Tenth Circuit.

Submitted July 12, 1978.

Decided Aug. 22, 1978.

Joseph F. Dolan, U. S. Atty., and William C. Danks, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellee.

Lawrence Rotenberg, Denver, Colo., for defendant-appellant Clayborne.

Michael F. DiManna, Denver, Colo., for defendant-appellant Ingram.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Clayborne and Ingram were indicted for the manufacture of a controlled substance, amphetamines, and for conspiracy to so manufacture. The substantive offense was pursuant to 21 U.S.C. § 841(a)(1), whereas the conspiracy was pursuant to 21 U.S.C. § 846 and § 841(a)(1). A third participant, one Kuck, was also indicted and convicted. That judgment has been affirmed by this court in *United States v. Kuck*, 573 F.2d 25 (10th Cir. 1978). Ingram was granted a mistrial, but on retrial was found guilty of conspiracy. The manufacturing count was then dismissed. We here review the convictions of Clayborne and Ingram.

The principal issue common to both defendants is whether the court erred in denying a motion to suppress certain evidence found during a warrant search of a clandestine amphetamine laboratory. It is claimed that this evidence was tainted by the illegal use of an electronic tracking device attached to a container of ether. The signal from this was located in the laboratory where the controlled substance was produced. The Federal Drug Enforcement Administration agents installed this device in a drum of chemicals purchased by Ingram.

Other points raised by Ingram herein are, *first*, that his Fifth Amendment right not to be placed twice in jeopardy for the same offense was violated. This, he argues, was a consequence of the granting by the court of the mistrial (on his motion). A *second*

point on behalf of Ingram attacks the receipt by the trial court of an index card which had certain chemical formulae on it for production of amphetamines. This was for use of chemicals which are used in making methamphetamines. The defense objection to this was that it was seized after indictment and thus should have been excluded as being in violation of Rule 403 of the Federal Rules of Evidence.

\* \* \* \* \* \*

## I.

In November 1976, Ingram ordered a quantity of ethyl ether from the Service Supply Company of Denver. At the same time he inquired about the obtaining of some phenyl-2–propanone. Both of these chemicals are used in the manufacture of methamphetamines. So following the placing of the order, the company, as a result of prearrangement, notified the Drug Enforcement Administration. On November 29, Ingram and another person picked up a 55-gallon drum of ethyl ether at Service Supply. He was observed doing this by agents of the DEA, who followed him to the home of Kuck's parents.

A subsequent transaction is the one which is here in issue. That occurred on December 20, 1976. On that date, Ingram again put in an order for ethyl ether. The DEA agents installed an electronic tracking device or "beeper" in a 55-gallon drum and then took the drum to Service Supply, where it was filled with ether and delivered to Ingram. The electronic beeper sends out periodic radio signals, which allow its location to be established and monitored.

On the day (December 29) that Ingram picked up this drum complete with the beeper, the agents followed him to his home and observed the drum being unloaded and taken into the house. The agents then proceeded periodically to monitor its presence to be sure that the drum did not move out of Ingram's home. However, on January 1, the beeper signal was no longer there and eventually the signal was found to emanate from 1229 South Bannock Street in Denver. These were commercial premises which had been leased by Clayborne. The agents de-

tected the smell of ether and noted that the windows were covered so as to prevent viewing the inside. After a day's surveillance, a search warrant was obtained and executed on January 2. The search produced methamphetamines together with materials and paraphernalia for their manufacture. This was the evidence which the defendants sought to have suppressed as being in violation of their Fourth Amendment rights. The contention was that the violation related back to the initial failure to obtain a warrant for use of the beeper.

The trial court denied the motion to suppress and did so on the basis that Ingram lacked standing to challenge the presence of the beeper inside the oil drum, it being the property of the DEA, and also because it was not a Fourth Amendment question.

## II.

The starting point in solving this present problem is a consideration of the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This is a new variation which questions whether, as a consequence of failure to obtain a warrant at the outset authorizing use of the beeper, the evidence obtained through subsequent use of the beeper, including that resulting from the search of the laboratory, was illegal because it was not in accordance with the requirements of the Fourth Amendment. In *Katz*, the Court held that the use of an electronic bug or microphone placed on the roof of a public telephone booth violated the Fourth Amendment. The reason was that the question was not whether places or property enjoy an immunity because of the Fourth Amendment, but, rather, whether the people are entitled to protection (and not places). The Court went on to hold that when the defendant closed the door of the telephone booth he believed that he had shut out all other persons and that he had privacy which would insure that his conversation would not be heard by others. The Court also stated that that which a person exposes to the public may not be the subject of Fourth Amendment protection, but that,

on the other hand, that which he seeks to preserve as private, even in an area accessible to the public, may enjoy constitutional protection.

Several circuits have considered the beeper problem in the light of *Katz*. *See United States v. Hufford*, 539 F.2d 32 (9th Cir.), cert. denied, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976), in which agents installed a beeper in a drum of caffeine which had been ordered by the defendants. Visual surveillance together with the beeper permitted the agents to isolate a drum of caffeine in the garage of the defendants. It was held that no reasonable expectation of privacy had been invaded, notwithstanding that the beeper was employed in a "probing, exploratory question for evidence." The Ninth Circuit relied on the Supreme Court's decision in *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). There the Court held that the warrantless scraping of paint from the exterior of a car parked in a public lot together with the measurement of its tire tread was not a violation for the reason that the expectation by the defendant of privacy was minimal. The Ninth Circuit related *Hufford* to the *Cardwell* holding in support of its conclusion that there was little expectation of privacy in driving along a public road. The beeper was viewed as merely an aid to or substitute for visual surveillance. It was regarded as being similar to the use of binoculars or trained dogs. *Cf. United States v. Venema*, 563 F.2d 1003 (10th Cir. 1977), wherein we approved the use of a trained dog to detect the scent of marijuana in a locker. That opinion could see no reasonable expectation of privacy in the air space around the locker.

The First Circuit in *United States v. Moore*, 562 F.2d 106 (1st Cir. 1977), has also considered the question. As in the present case, federal agents installed a beeper in a container of chemicals which had been ordered by the defendants. When delivery was taken a second beeper was attached to their van. The agents, aided in part by the beepers, followed the defendants to a house. The beeper in the container was subsequently used to monitor the presence of the chemicals inside the house. Subsequently, a search warrant was obtained and the search revealed the clandestine manufacture of methamphetamines. The court distinguished between the use of a monitoring device to track a vehicle and the use of it to monitor the continued presence of the chemicals in the house. The latter was considered to be an invasion of the privacy of the home. It was acknowledged that the beeper in the car constituted an intrusion, but that its use could be justified on the basis of the mobility of the car and the lack of reasonable expectation of privacy with respect to it. Probable cause was held to exist with respect to the monitoring of the location of the vehicle. Once the defendants left the vehicle and entered the house, the right of privacy existed free from warrantless intrusion by the government. The court also observed that the fact that the defendant initially had no rights in the chemical boxes was not of any significance since they later obtained lawful possession, and the agents sought to use the electronic devices after this.[1]

The court held that evidence derived from the use of the beeper while the material was in the house had to be suppressed. The court did, however, leave the door open to separation of the evidence illegally obtained while in the house and the use of evidence which derived from the beeper prior to its being taken into the house, e. g., while the material was being transported in a car. There was a remand to the district court to determine the part of the evidence which had to be suppressed and that which did not.

■ In the instant case the beeper surveillance evidence within the house and that within the laboratory do not come together as one connected transaction. The agents lost contact with the device follow-

1. We agree with this ruling and would take the same position in the case at bar if the proposition were to be seriously argued.

ing the movement from the house. An independent effort was necessary to reestablish contact. So the laboratory contact is not tainted by the surveillance within the house.

Our court has recently filed an opinion which, although not factually on all fours with this case, is similar to it. We refer to *United States v. Shovea*, 580 F.2d 1382 (10th Cir. 1978). The beeper was there used only for the purpose of tracking the car. Federal agents arranged a delivery to the defendant and followed him to a house occupied by a codefendant, which home was in Denver. A beeper was placed on the codefendant's car at that place and shortly thereafter agents by use of the beeper were able to trace the car to the proverbial clandestine laboratory. The court recognized that electronic tracking devices were appropriate even without prior court approval where there was probable cause or exigent circumstances. Probable cause was found to be present. Circumstances relating to probable cause were substantially the same background circumstances which are here.

Judge Barrett, writing for the panel, expounded the established truth that there was minimal expectation of privacy in an automobile along a public road, citing *United States v. Frazier*, 538 F.2d 1322 (8th Cir. 1976), *cert. denied*, 429 U.S. 1046, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977), wherein the use of a beeper on a car was approved in connection with an ongoing kidnap plot.

 In the case before us it was the beeper on the inside of the drum of ether which enabled the agents to locate the laboratory. The agents in our case had to use an airplane to pick up the beeper signal and locate the building in which the clandestine laboratory was located. This was true because in the first instance they were not aware that the drum had been moved from Ingram's house. Given the proposition that the home cannot be invaded without a warrant, does it follow that a clandestine laboratory in which amphetamines are likely to be manufactured enjoys the same protection?

Although this case is factually similar to our decision in *Shovea*, in the Ninth Circuit's decision in *Hufford* and the First Circuit's decision in *Moore* there are differences. Both *Shovea* and *Moore* held that beeper surveillance without warrants for the purpose of monitoring vehicles was valid. In all of the cited cases, and also in the present case, there is information of the agents amounting to probable cause to believe that a controlled substance was about to be made. While approving the use of the beeper for monitoring the automobile, the First Circuit in *Moore* distinguished the use of the beeper in the home. It held that there could not be a warrantless search inside the house. It also held that the lessened expectancy of privacy when using vehicles had no relevance; that although surveillance of the automobile could be conducted without a warrant, the same was not true of a home.

*Hufford* comes closest to this case since there the beeper was inside a garage. Here the beeper revealed the presence of the drum of ether inside the clandestine laboratory at 1229 South Bannock. Does the use in these circumstances constitute a per se violation of the Fourth Amendment? We conclude that it does not. The clandestine laboratory here was a commercial establishment which was susceptible not only to outside viewing, but also to ingress and egress of the public.[2] Strict privacy as in a home was not to be properly expected here. There is a vast difference between it and *Katz*. The difference is found in a comparison of the size and extent of the intrusion in each case. That in *Katz* is great because

---

**2.** The testimony of one of the agents included a description of the building.

> Q Would you describe the warehouse, whatever type of building is appropriate at 1229 South Bannock?
>
> A The building is a long one-story building with four sets of office or industrial space

in it. Each space had a large overhead door and a single small door adjacent to the overhead door, both front and rear. 1229 was the space the further south on the building.

> Q So there are actually several entrances in that one warehouse building?
>
> A Yes, sir, four.

of the wholly unexpected eavesdropping on a *conversation.* We say that it was proper to use the device to locate the drum of chemical in the clandestine laboratory at 1229 South Bannock Street, a new location which proved to be a commercial building with the windows covered to protect against viewing the activities and materials inside. It was also within the law for them to make every effort to ascertain what was going on within the laboratory including the testing of the odors and the observations that the windows were covered. We consider the electronic beeper as a substitute for persistent extensive visual effort. We do not say that the laboratory stands on the identical footing as the automobile, and clearly it is not the same as Ingram's home, which the Fourth Amendment protects from invasion.[3] We are persuaded by the fact that the intrusion of the clandestine laboratory was slight. Also, it is not to be argued that defendant-appellant had a justifiable or reasonable expectation that there would not be any disturbance of privacy. Also, the use of the beeper within the laboratory was vastly different from the use of the recording device in the telephone booth in *Katz.* The invasion in *Katz* was of great magnitude in comparison with the intrusion here.

Under these special facts, then, we must hold that the slight intrusion was not per se in violation of the Fourth Amendment and that the use of the beeper without a warrant was not invalid. The trial court did not err in denying the motion to suppress.

### III.

■ The defendant Ingram maintains that his rights under the Double Jeopardy Clause were violated when the court granted a mistrial. He concedes that where the defendant moves for the mistrial the general rule is that retrial is not barred except in the instance in which the judicial or prosecutorial error that prompted the motion was intended to provoke the motion or was

otherwise motivated by bad faith or undertaken to harass or prejudice petitioner. *See Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) (*quoting United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)).

Several of the circuits have characterized the test as to whether retrial is to be barred even though the mistrial was at the request of the defendant as whether there was gross negligence or intentional misconduct which led to the granting of the mistrial. *See United States v. Martin,* 561 F.2d 135 (8th Cir. 1977); *United States v. Kennedy,* 548 F.2d 608 (5th Cir. 1977).

Ingram maintains that the trial judge was grossly negligent in violating his right to be present at trial by not adjourning the trial to determine whether his absence was voluntary. We disagree. The judge was talking about the fact that Ingram was late for the trial once and, finally, was absent altogether for a day due to his having been arrested and placed in jail in Aurora, a nearby community. The court had gone ahead with the trial in his absence, but once the judge found out that his absence had been involuntary, he granted the mistrial on the motion of the defendant. Under these circumstances, we fail to see that there was either invalid coercion exercised by the court or that there was negligence or other misconduct.

### IV.

■ Ingram's final contention is that the trial court erred in receiving Exhibit 14, an index card with some chemical formulae having to do with chemicals which could be used for making amphetamines. This was taken from Ingram's person when he was arrested two months after the indictment. At the first trial the Exhibit was excluded because Ingram was being tried with Clayborne. At the second trial Ingram was tried alone and the Exhibit was received. The defendant objected on the ground that it resulted from investigation subsequent to

---

**3.** There is no evidence which resulted from the clearly illegal monitoring of the inside of the home.

352

the indictment and was inadmissible under Rule 403, which declares that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion.

Defendant's argument in reality is that the Exhibit evidenced acts subsequent to the conspiracy and thus it is contrary to the rules in *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), and *United States v. Floyd*, 555 F.2d 45 (2d Cir. 1977), which concerned evidence of post-conspiracy acts or cover-up tactics which are quite different from the card in the present case. It is for the trial court to determine relevance, and we cannot agree with defendant that it is incompetent. It does not appear that the evidence was inconsistent with the indictment. Indeed it was entirely consistent with it and receipt of it was not erroneous.

The judgment of the district court is affirmed.