UNITED STATES of America, Appellee,

v.

Leroy Carlton KNOTTS and Darryl Petschen, Appellants.

Nos. 80–1952, 80–1953.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1981.

Decided Oct. 30, 1981.

Rehearing and Rehearing En Banc Denied Dec. 29, 1981.

Thomas K. Berg, U. S. Atty., Ann D. Montgomery, Asst. U. S. Atty., D. Minn., argued, Minneapolis, Minn., for appellee.

Elizabeth L. De La Vega, Legal Intern.

William J. Mauzy, Minneapolis, Minn., for Darryl Petschen.

Joseph S. Friedberg, Mark W. Peterson, argued, Minneapolis, Minn., for Leroy Knotts.

Before HEANEY and HENLEY, Circuit Judges, and PECK,* Senior Circuit Judge.

PECK, Senior Circuit Judge.

Leroy Knotts and Darryl Petschen appeal from their convictions of conspiring to manufacture controlled substances. The principal issue on appeal concerns the admissibility of evidence obtained through use of a signal transmitter ("beeper") placed by police agents in a can of chloroform purchased by a co-conspirator of the appellants'. Knotts and Petschen argue that the warrantless use of this beeper violated their Fourth Amendment rights, and that the evidence obtained through tracking the beeper should have been excluded by the district court.

Knotts and Petschen were part of an enterprise engaged in the manufacture of amphetamine or methamphetamine. A third member of this enterprise was Tristan Armstrong, the "chemist" of the group, who was indicted with the appellants but pleaded guilty and testified against them. In June of 1979, Armstrong had drawn the suspicion of Minnesota investigators by his alleged pilferage of drug-precursor chemicals from 3M, his former employer. Further investigation of Armstrong raised suspicion of illicit drug manufacturing, and produced evidence linking Armstrong to appellant Petschen. Armstrong was placed under surveillance and seen taking boxes from the Hawkins Chemical Company in Minneapolis to Petschen's house in that city.

Petschen in turn took the boxes to a farmhouse in Scandia, Minnesota, where they were unloaded.

Despite the apparent success of visual surveillance, police agents took the further step of using electronics. On February 28, 1980, Minnesota agents delivered to the Hawkins Chemical Company a can of chloroform in which a beeper had been placed with the company's consent. As expected, Armstrong picked up the can later that day. Police followed Armstrong to Petschen's house, where the can was transferred to Petschen's car. Petschen was followed to his Scandia farmhouse, where he stopped only briefly before driving on. The agent following Petschen twice lost sight of Petschen's car, once purposely when Petschen, perhaps aware that he was being followed, began driving evasively. Shortly after this evasion the agent lost the beeper signal, and the drum's location was uncertain until the signal was again picked up and its source verified through the use of a helicopter. The drum was stationary at a spot later found to be in the yard of a secluded cabin owned by appellant Knotts.

Four days later, Minnesota and federal agents got and executed warrants to search Petschen's farmhouse and Knotts' cabin. The search of the cabin uncovered a clandestine drug laboratory. Chemicals and equipment seized from this laboratory were admitted into evidence over Knott's and Petschen's motions to suppress.[1]

The Fourth Amendment is currently described as protecting persons' "legitimate expectations of privacy" from government's unreasonable intrusions. See *Rawlings v. Kentucky*, 448 U.S. 98, 103–105, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *United States v. Salvucci*, 448 U.S. 83, 89–91, 100 S.Ct. 2547, 2552–53 (1980); *Rakas v. Illinois*, 439 U.S. 128, 139–49, 99 S.Ct. 421, 428–433, 58 L.Ed.2d 387 (1978). Such intru-

---

* The Honorable John W. Peck, United States Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit sitting by designation.

1. The search of Petschen's residence also uncovered precursor chemicals and incriminating documents. On appeal, Petschen does not question the validity of the warrant to search his house.

sions are unreasonable if the applicable cause or warrant requirements are not met. *E. g., Katz v. United States*, 389 U.S. 347, 356, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Rawlings, supra*, 448 U.S. at 113, 100 S.Ct. at 2565 (Blackmun, J. concurring).

The difficulty in applying the test of "legitimate expectations of privacy" in electronic surveillance cases is that consideration of such expectations leads almost ineluctably to the "philosophical question" whether the constitutional protections of privacy must or should diminish with technological innovations in surveillance. *See United States v. Bruneau*, 594 F.2d 1190, 1196 (8th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979). The Court in *Bruneau* was reluctant to address this sweeping question. It limited its decision to the narrow question before it, and we will follow this judicious lead.

■ The narrow preliminary issue in this case is whether the monitoring of a beeper placed in an item of non-contraband personalty can be a search subject to the Fourth Amendment's restrictions.[2] This is not a case of a beeper being attached to an automobile, so the ultimate issue is not whether there can be an expectation of privacy in the route taken by an auto over public roads. *Cf. United States v. Michael*, 645 F.2d 252, 257 (5th Cir. 1981) (en banc, 11–3–10 decision) (plurality relied on the diminished expectation of privacy surrounding automobiles), *cert. denied*, —— U.S. ——, 102 S.Ct. 489, 70 L.Ed.2d 257 (1981); *United States v. Moore*, 562 F.2d 106, 112–13 (1st Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978) ("probable cause" sufficient to justify warrantless electronic tracking of car on public roads); *United States v. Hufford*, 539 F.2d 32, 34–35 (9th Cir.), *cert. denied*,

429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976) (used same rationale as *Michael* plurality).

The Circuits that have considered the constitutional strictures on tracking beepers placed, not on vehicles, but on other personalty, have reached varying results. Numerous courts have seen no legitimate expectation of privacy in the movement of illicit drugs discovered in international mail. *See United States v. Bailey*, 628 F.2d 938, 942 (6th Cir. 1980), and cases cited there. The chemical tracked in this case is not contraband. It would be a limitless expansion of police power to allow warrantless tracking of lawful goods wherever an illicit use was suspected. If crime is suspected, cause for electronic surveillance of any private area or activity should be determined by a neutral magistrate, not by interested executive ·agents. *See Bailey, supra*, 628 F.2d at 944.

The First and Sixth Circuits have held that if an object is placed in a "private area," *Bailey, supra*, 628 F.2d at 944, or "with[drawn] from the public view," *Moore, supra*, 562 F.2d at 113, beeper surveillance of the object's location or movement is an infringement of legitimate privacy interests. As such this surveillance is subject to the warrant or cause requirements of the Fourth Amendment. The Ninth and Tenth Circuits, on the other hand, have formulated what might be called a *de minimis* exception to the Fourth Amendment, holding that since the intrusiveness of beepers is slight, beeper surveillance does not require the antecedent justification of a warrant. *See United States v. Clayborne*, 584 F.2d 346, 350–51 (10th Cir. 1978)[3]; *United States v. Dubrofsky*, 581 F.2d 208 (9th Cir. 1978), *followed, United States v. Bernard*, 625 F.2d 854, 859–60 (9th Cir. 1980).

---

**2.** Another preliminary issue is whether *installation* of the beeper violated constitutional protections. Following *Bruneau*, we hold that the consent of the owner at the time of installation meets the requirements of the Fourth Amendment, even if the consenting owner intends to soon sell the "bugged" property to an unsuspecting buyer. *See* 594 F.2d at 1194. *Caveat emptor.*

**3.** *Clayborne* also suggests that the area invaded by the use of the beeper in that case was open to the public, although the only information offered to support that conclusion was that the building housing the clandestine laboratory in *Clayborne* had several entrances. *See* 584 F.2d at 350 n.2 and accompanying text.

The decisions of the First and Sixth Circuits are more persuasive. Expectation of privacy is the touchstone of Fourth Amendment protections, and expectations of privacy do not depend on the artfulness and suavity of the invasive means of government agents. In the present case the beeper's signal led police agents to a drum of chloroform beneath a wooden barrel in the yard of a remote rustic cabin. This cabin was not found by watching or tracking the "public" progress of Petschen in his car. Agents lost both natural and electronic "sight" of Petschen and did not again pick up the signal from the bugged container until the container was stationary and out of public view at the cabin owned by Knotts.

The argument raised by the government, that "use of a beeper to monitor the path of an object contemplates use of a beeper to determine its final resting place" proves too much in this case. As noted above, a principal rationale for allowing warrantless tracking of beepers, particularly beepers in or on an auto, is that beepers are merely a more effective means of observing what is already public. But people pass daily from public to private spheres. When police agents track bugged personal property without first obtaining a warrant, they must do so at the risk that this enhanced surveillance, intrusive at best, might push fortuitously and unreasonably into the private sphere protected by the Fourth Amendment. It did so in this case, where the beeper's signal was lost and found again only after the beeper-laden drum was on private property out of public view.

■ Knotts, as the resident of the property, could certainly have a reasonable, legitimate expectation of privacy in the kind and location of objects out of public view on his land. With Petschen, however, this is not so. Petschen asserts that he had a reasonable expectation of privacy in articles left at Knotts' farm because he was a co-venturer of Knotts' and had a "possessory and proprietary interest in the laboratory equipment, chemicals and in the laboratory which he set up and operated." Although Petschen might have had a subjective expectation of privacy in the equipment of a clandestine drug laboratory on his coconspirator's property, this is not an expectation "that society is prepared to recognize as 'reasonable.' " *Rakas v. Illinois,* *supra,* 439 U.S. at 143 n. 12, 99 S.Ct. at 430 (quoting *Katz v. United States,* 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring)). The evidence obtained from the search of Knotts' cabin was admissible against Petschen, but not against Knotts.

■ The appellants' second contention, that there was a fatal variance between the indictment and proof in their cases, is not persuasive. The indictment charged conspiracy to manufacture "controlled substances, including but not limited to, [*sic*] methamphetamine. . . ." The evidence at trial tended to show conspiracy to produce amphetamine, not methamphetamine. Amphetamine is also a controlled substance, so there was no variance from the indictment's charge. Even though the proof did vary from the superfluous example of a controlled substance given in the indictment, that variance did not affect "substantial rights" of the appellants.[1] *See* Fed.R.Crim. Pro. 52(a).

For the reasons set forth above, appellant Petschen's conviction is affirmed; appellant Knotts' is reversed.

HENLEY, Circuit Judge, dissenting in part.

While I concur in the majority's affirmance of Petschen's conviction, I would affirm as well the conviction of Knotts.

First, it is not clear that monitoring a beeper which only broadcasts location is a "search," as opposed to a mere visual aid such as binoculars, search lights, or trained dogs. *See United States v. Bruneau,* 594 F.2d 1190, 1196 (8th Cir. 1979); *United States v. Dubrofsky,* 581 F.2d 208, 211–12 (9th Cir. 1978). Assuming, however, that monitoring the beeper in this case was a search, and further assuming that Knotts had standing to raise a fourth amendment challenge, the issue becomes whether

Knotts had a reasonable and legitimate expectation of privacy in the location of the barrel of chloroform on his property.

As the majority notes, the cases are inconsistent in this area, in terms of both result and analysis. One analysis focuses on the *location* of the item containing the beeper. Under this analysis, items may generally be monitored in public places, *e. g., United States v. Moore*, 562 F.2d 106, 112–13 (1st Cir. 1977), *cert. denied sub nom. Bobisink v. United States*, 435 U.S. 926, 97 S.Ct. 533, 50 L.Ed.2d 614 (1978), but monitoring may be prohibited after the items are withdrawn from public view, *e. g., United States v. Bailey*, 628 F.2d 938, 944 (6th Cir. 1980). Another analysis focuses on the *nature* of the item containing the beeper. Under this analysis, contraband items may be monitored regardless of location, *e. g., United States v. Emery*, 541 F.2d 887 (1st Cir. 1976), whereas most noncontraband items may be monitored under the former analysis only if they are in a public location, *e. g., United States v. Moore, supra.* Cf. *United States v. Perez*, 526 F.2d 859, 863 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976) (beeper placed in television received in exchange for heroin). The rationale underlying the "contraband exception" is that one cannot have a legitimate expectation of privacy in "property which he has no right to possess," *United States v. Emery*, 541 F.2d at 889–90, or in property which is a direct part of a negotiated illegal transaction. *United States v. Perez*, 526 F.2d at 863.

The facts in this case arguably support Knotts' conviction under either analysis. As the majority observes in note 3, the Tenth Circuit, in *United States v. Clayborne*, 584 F.2d 346, 350–51 (10th Cir. 1978), apparently suggested that one does not have a legitimate expectation of privacy in a clandestine laboratory. *See United States v. Bruneau*, 594 F.2d at 1195–96 n. 11. The facts in this case indicate that the beeper led agents to a clandestine laboratory on Knotts' property.

A more persuasive argument may be made in support of Knotts' conviction, how-ever, pursuant to the second analysis. Under this approach, the issue as stated in *United States v. Bailey*, 628 F.2d at 944, is whether the contraband exception should be expanded to include precursor chemicals such as the chloroform in the present case. The majority concludes that such an expansion "would be a limitless expansion of police power [allowing] warrantless tracking of lawful goods wherever an illicit use was suspected." The majority's concern with limitless police power is certainly a valid one, and the distinction between contraband and noncontraband may be convenient. Nevertheless, such an inflexible rule might prohibit a true determination of the legitimacy of an expectation of privacy in items intended for use in the illegal manufacture of controlled substances.

The rationale and policy considerations underlying the contraband exception can safely be applied to certain non-contraband items. For example, the Fifth Circuit, in *United States v. Perez, supra,* suggested in dictum that "a person who accepts an item of personal property in exchange for heroin has no reasonable expectation that it is cleansed of any device designed to uncover the tainted transaction or identify the parties." *Id.* at 863. *See United States v. Bailey*, 628 F.2d at 944; *United States v. Moore*, 562 F.2d at 111. If society would not legitimize an individual's expectation of privacy in a television received in exchange for heroin, it seems that an expectation of privacy in the location of chemicals intended for use in the manufacture of illegal drugs should enjoy no higher status, and that when chemicals are purchased for such intended illegal use, the familiar warning cited by the majority in note 2, *caveat emptor*, might be well-taken.

The majority express a concern that expansion of the contraband exception would result in unbridled use of electronic devices to track legally possessed items based on a mere suspicion that such items are destined for illegal use. Such a result is certainly to be avoided, but it is not the necessary consequence of refusing to legitimize an expectation of privacy in precursor chemicals.

One aspect apparently not considered by the courts is the effect of the forfeiture provision of the Controlled Substances Act on an individual's possessory interest in precursor chemicals. 21 U.S.C. § 881. Subsection (a)(2) provides for the forfeiture of "[a]ll raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, [or] processing . . . any controlled substance in violation of this subchapter." Although the forfeiture provision does not make possession of precursor chemicals illegal per se, it clearly affects the right to possess such chemicals, and diminishes one's legitimate expectation of privacy with respect to these items.

Furthermore, in the circumstances of this case, the expansion of the contraband exception to include precursor chemicals subject to forfeiture would not allow the government to act on mere suspicion. From the moment Armstrong loaded the beeper-laden drum of chloroform into his automobile, that chloroform became dedicated to use in the very illegal conspiracy of which defendants were convicted and, so dedicated, that chloroform immediately became subject to forfeiture. Although the government agents did not at that time know all of the persons who might be engaged in the illicit operation, they had probable cause to believe that the chloroform was intended for illegal use, as indeed it was.[1] Thus, I conclude that Knotts had no legitimate expectation of privacy in the location of the chloroform that was violated by monitoring the beeper.

As indicated, I concur in the affirmance of the conviction of Petschen; I dissent from the reversal of the conviction of Knotts.

---

1. Under 21 U.S.C. § 881(a) and (b) warrantless seizure of the chloroform on probable cause was authorized and where such a seizure is authorized attendant warrantless search of the vehicle containing the forfeitable material is permissible. *United States v. Milham*, 590 F.2d 717 (8th Cir. 1979), *citing Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1966).