**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**James Connors KARO, Richard Miles Horton, William Robertson Harley, Michael Gaylord Steele, Evan Roth, Gene R. Rhodes, Defendants-Appellees.**

**Nos. 81–1899, 81–1902 to 81–1906.**

United States Court of Appeals,
Tenth Circuit.

June 20, 1983.

Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M. (Don J. Svet, William L. Lutz, U.S. Attys., Albuquerque, N.M., and James F. Blackmer, Asst. U.S. Atty., Albuquerque, N.M., with him on the briefs), for plaintiff-appellant.

Nancy Hollander of Freedman, Boyd & Daniels and Reber Boult, Asst. Federal Public Defender, Albuquerque, N.M. (James Beam and Roger Bargas, Albuquerque, N.M., with them on the briefs), for defendants-appellees Karo, Steele, Roth, and Rhodes.

Charles Louis Roberts, El Paso, Tex. (William Marchiondo, Albuquerque, N.M., and Joseph Abraham, Jr., El Paso, Tex., with him on the briefs), for defendants-appellees Horton and Harley.

Before McWILLIAMS, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

This appeal arises from an action in which defendants James Karo, Richard Horton, William Harley, Michael Steele, Evan Roth, and Gene Rhodes were charged with conspiracy to possess cocaine with intent to distribute it, a violation of 21 U.S.C. § 846, and all defendants except Rhodes were charged with possession of cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). The defendants filed a joint motion to suppress evidence against them, claiming that the evidence was obtained in violation of their Fourth Amendment rights. The government had obtained an order authorizing the installation of an electronic tracking beacon (beeper) in a can of ether ordered by Karo, Horton, and Harley through a government informant. Government agents had installed the beeper and tracked the ether over a period of five months, during which the can had come to rest in four homes and two rented storage lockers. Using the information obtained from beeper and other surveillance, government agents obtained a search warrant for the last residence to which the ether was taken, where they seized substantial incriminating evidence. The district court held that the order authorizing the installation of the beeper was invalid because the government made deliberate misrepresentations in the affidavits seeking the order. The court suppressed all the evidence obtained from the search of the residence as fruit of illegal monitoring.

The issues on appeal are (1) whether the government's appeal was timely filed; (2) whether the government was required to obtain a search warrant to install the beeper and use it to monitor movements of the can of ether; (3) if the warrantless use of

the beeper was illegal, whether the evidence seized under the search warrant for the residence must be suppressed; and (4) whether the district court erred in suppressing the evidence as to all defendants.

## I

█ The government must file its notice of appeal within thirty days after entry of the judgment or order from which it appeals. "A judgment order is entered within the meaning of this subdivision when it is entered in the criminal docket." Fed.R. App.P. 4(b). A motion to reconsider extends the time for filing a notice of appeal only if the motion is filed within the thirty days allowed for filing a notice of appeal. The notice of appeal must then be filed within thirty days after the denial of the motion to reconsider. *United States v. Martinez,* 681 F.2d 1248, 1253 (10th Cir. 1982).

█ In the instant case the judge stated in open court on May 12, 1981 that the motion to suppress would be granted. A notation of the ruling was made on the docket that day. The judge followed with a written order suppressing the evidence; the written order was dated and noted on the docket on May 22, 1981. The government's motion for reconsideration was timely if measured from May 22, but was not timely if measured from May 12. The time allowed for appeal begins to run " '[w]hen the trial judge acts in a manner which clearly indicates his intention that the act shall be the final one in [the] case, and a notation of the act has been entered on the docket.' " *United States v. Martinez,* 681 F.2d at 1252 (quoting *Rubin v. United States,* 488 F.2d 87, 88 (5th Cir.1973)). We believe that the May 22 entry rather than the May 12 entry controls because when the judge made his oral declaration he stated that a written order would be entered. *See United States v. Santia-Manriquez,* 609 F.2d 1162 (5th Cir. 1980); *United States v. Samango,* 607 F.2d 877, 880 (9th Cir.1979); *United States v. St. Laurent,* 521 F.2d 506, 511 (1st Cir.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); *see also Carnes v. Unit-*

*ed States,* 279 F.2d 378 (10th Cir.1960). Therefore, the government's motion to reconsider and subsequent notice of appeal were timely.

## II

█ The government does not appeal the district court's finding that the order authorizing the beeper was invalid; therefore, the activity in this case must be treated as warrantless installation and monitoring. The government argues that no warrant was needed. Two claims are advanced by the government to support this argument: that the defendants had no expectation of privacy in the can of ether to which the beeper was affixed because the ether was contraband, and that any intrusion from the installation or monitoring of the beeper was too minimal to implicate the warrant requirement.

Ether is not a controlled substance, but the government argues that because the ether was to be used to produce cocaine it can be considered contraband. While courts generally recognize that a person does not have a reasonable expectation of privacy in or right to possess contraband, *see, e.g., United States v. Washington,* 586 F.2d 1147, 1154 (7th Cir.1978); *United States v. Pringle,* 576 F.2d 1114, 1119 (5th Cir.1978); *United States v. Emery,* 541 F.2d 887, 889 (1st Cir.1976), they have been unwilling to extend this rule to objects that are rightfully possessed but are suspected of use in criminal activity, *see, e.g., United States v. Knotts,* 662 F.2d 515, 517 (8th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983); *United States v. Bailey,* 628 F.2d 938, 944 (6th Cir.1980); *United States v. Moore,* 562 F.2d 106, 111 (1st Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). We agree that the suspicion that noncontraband material might be used in criminal activity does not turn it into contraband. Therefore, the defendants had a legitimate expectation of privacy in the can of ether.

The government's claims that the installation and monitoring of the beeper were

not unlawful searches or seizures are much more difficult issues. Three of the defendants—Karo, Horton, and Harley—ordered ten five-gallon cans of ether from a government informant, Carl Muehlenweg. Muehlenweg alerted Drug Enforcement Administration agents about the shipment and told the agents that the ether would be used in the production of cocaine. With Muehlenweg's consent government agents substituted their own can with a beeper installed in it for one of the cans in the shipment. The can containing the beeper was delivered to Muehlenweg's residence in Albuquerque, New Mexico. On September 20, 1980 Karo picked up the ether from Muehlenweg's residence. Using both visual and beeper surveillance, DEA agents traced the ether to Karo's home. An agent subsequently monitored the beeper to verify that the ether was still in Karo's residence. Later that same day the ether was transferred to Horton's home in the same city. No agent saw the transfer; the new location was ascertained by use of a direction finder, which picked up the beeper signal. A DEA agent also walked the public sidewalk near Horton's residence and smelled the odor of ether in the immediate vicinity of the house.

Two days later, monitoring revealed that the ether was no longer at Horton's house. DEA agents had not observed any movement. They used the direction finder to locate the ether can in a third residence, the home of Horton's father. The following day, the beeper was no longer transmitting from Horton's father's home. By using the direction finder, the agents were able to trace the can to a commercial self-storage facility in Albuquerque. When they could not trace the can to a particular locker, they obtained a subpoena and determined that Horton and Harley shared the rental expenses on locker 143. The agents verified that locker 143 contained the ether by walking to the front of that locker and sniffing the odor emanating from the cans. On October 8, 1980, DEA agents obtained an order authorizing installation of an entry tone alarm into the door jamb of locker 143.

While opening the door of that locker to install the alarm they observed the cans containing the ether. Thereafter the agents apparently relied upon the entry tone alarm, which malfunctioned. They did not learn of the removal of the contents of the locker until October 16, when the manager of the storage facility informed them that the cans had been removed.

Using their direction finder, the agents picked up the beeper signal three days later at another self-storage facility in Albuquerque. Through discussions with the facility manager, the can of ether was traced to locker 15, which had been rented by Horton and Harley using an alias. The agents obtained an order permitting the installation of an entry tone alarm for this locker, but instead, with the permission of the manager, installed in a separate locker a closed circuit video camera focused on the door of locker 15. This camera was monitored by DEA agents, who observed Horton and Harley visiting the locker. During this time the order authorizing the beeper lapsed and was extended by court order a few days later. Finally, on February 6, 1981, DEA agents observed by means of the video camera that the ether cans were being removed from the locker by Rhodes. Using both visual and beeper surveillance, the agents followed the ether to Rhodes' residence. The record indicates that the ether remained in a truck parked in the driveway of Rhodes' residence. That same day agents followed the truck to a residence in Taos, New Mexico rented by Steele, Horton, and Harley. The beeper was used to monitor the can of ether while it was inside the Taos residence. Three days later, the government obtained a search warrant for the residence, which was executed the following day. Horton, Harley, Steele, and Roth were arrested at the residence, and cocaine and laboratory equipment were seized in the search.

We first address the question whether the warrantless installation of a beeper in the can of ether designated to go

to Karo was constitutionally permissible.[1] The government argues that because its informant, Muehlenweg, consented to placing the ether in the can containing the beeper, no warrant was required. This argument, which some courts have adopted, *see, e.g., United States v. Knotts,* 662 F.2d 515, 517 n. 2 (8th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983); *United States v. Bailey,* 628 F.2d 938, 943 (6th Cir.1980), rests on the assumption that what happens to an object before it comes into the ownership of the defendant cannot be complained of by the defendant. Before Karo took control of the ether, the can with the beeper was the property of the DEA and the ether was the property of Muehlenweg. At that time, the DEA and Muehlenweg presumably could do with the can and ether whatever they liked without violating Karo's rights. But we do not think that the analysis should end at this rudimentary level. Although the physical installation of the beeper in the can takes place before the new owner picks it up, we believe an intrusion occurs at the time the item comes into his possession. All individuals have a legitimate expectation of privacy that objects coming into their rightful ownership do not have electronic devices attached to them, devices that would give law enforcement agents the opportunity to monitor the location of the objects at all times and in every place that the objects are taken, including inside private residences and other areas where the right to be free from warrantless governmental intrusion is unquestioned. In *United States v. Lewis,* 621 F.2d 1382, 1388 (5th Cir.1980), the court noted that "[t]here arguably is a right to enjoy the use of goods without the possibility of uninvited monitoring that [even] an unactivated beeper would create." The installation of a beeper on an item of personal property gives the government the capability of tracing every movement of the object on which the beeper is placed. Since items of personal property seldom travel on their own accord, the installation also allows the tracing of movements of the person or persons possessing that object, regardless of the relationship of that person to the information sought by the government. We believe that individuals have a reasonable and legitimate expectation that the government will not engage in such activity without the protections afforded by resort to the judicial process. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).[2] Thus, regardless of the consent obtained when the beeper is physically installed, an infringement of the new owner's Fourth Amendment rights begins at the time the object comes into his control.[3] The consent of one

1. In *United States v. Knotts,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), the Court did not consider the validity of the warrantless installation because it was not challenged in that case. *Id.* at —— n. *, 103 S.Ct. at 1082 n. *. Here Karo's right to object to the admission of the evidence seized from the Taos house depends upon the validity of the installation, which he did challenge.

2. In *United States v. Shovea,* 580 F.2d 1382, 1387–88 (10th Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978) *and* 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979), this Court held that police could affix a beeper to the outside of an automobile if they had probable cause to believe that it would lead to evidence of a crime and exigent circumstances prevented them from obtaining a warrant. *Shovea* recognizes the intrusive nature of the presence of a beeper on personal property; its rule accounts for the lessened expectation of privacy generally associated with automobiles. *See also United States v. Moore,* 562 F.2d at

112–13 (applying probable cause standard for automobiles but requiring warrant for monitoring of box of chemicals).

3. Even cases relying strictly on the physical intrusion of installation prior to ownership recognize the concept of intrusion that underlies our holding.
    "[S]ince the Government owned the chemicals at the time it installed the beeper, its consent obviated any potential warrant requirement. However, ... the consent of the Government could not satisfy the fourth amendment after ownership and control of the chemicals passed to the defendants. *See United States v. Moore, supra,* 562 F.2d at 111; *United States v. Clayborne, supra,* 584 F.2d [346] at 349 & n. 1 [ (10th Cir.1978) ]. The Government's proposed expansion of the consent exception would allow warrantless installation and monitoring of the beepers or even radio transmitters in any property the Government might decide to sell."
    *United States v. Bailey,* 628 F.2d at 943 n. 7.

owner to have a beeper installed cannot suffice to continue the installation once the item belongs to someone else any more than the consent of a previous owner of a suitcase could suffice to permit the police to periodically open and search the suitcase after it comes under the ownership of another. Therefore, we hold that before the government agents could transfer the can of ether containing a beeper to Karo, they had to obtain an authorizing warrant.[4]

■ We also must determine whether the defendants' legitimate expectations of privacy were violated by the action of the government in monitoring the beeper. In *United States v. Knotts,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), officials tracked a drum of chloroform containing a beeper from the place of its purchase, through an automobile trip, to its burial under a barrel outside a cabin owned by one of the defendants. The Court held that no unlawful search or seizure had occurred because no legitimate expectation of privacy of the defendants had been invaded. *Id.* at ——, 103 S.Ct. at 1087. In reaching that conclusion the Court relied in large part on the reduced expectation of privacy enjoyed by travelers on public roads. The Court noted that nothing in the record indicated that the beeper was used after the drum had been located in the area of the cabin. It emphasized that visual surveillance from public places along the route or adjoining the premises would have revealed all of the same facts to the police: the beeper was not used "in any way to reveal information . . . that would not have been visible to the naked eye from outside the cabin." *Id.* at ——, 103 S.Ct. at 1087.

In the case before us the beeper was monitored while the can was within private residences and storage lockers. The beeper gave law enforcement officials information that could not be discovered by ordinary visual surveillance, even had that surveillance been constant. The *Knotts* case in-

volved surveillance over only a few days; monitoring in the instant case took place over five months. In *Knotts* the drum was never inside a residence; here the ether was inside four residences. In *Knotts* the officers lost track of the automobile carrying the drum once on the public highway; here the officers lost track of the ether can for significant periods of time, after the ether had come to rest in residences and a rented locker. In the instant case, most of the tracing to new locations was possible only by use of the direction finder to locate the beeper.

The monitoring of the beeper in the instant case was a different type of intrusion than that in *Knotts,* touching upon privacy interests that historically have been protected by the Fourth Amendment. We hold that the warrantless use of a beeper to monitor the location of noncontraband withdrawn from public view inside private residences or similarly protected places is an unconstitutional search or seizure. We agree with the statement of the court in *United States v. Moore,* 562 F.2d 106 (1st Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978):

> "When defendants withdrew from the public view, taking the box of chemicals with them, they had every right to expect that their activities inside the house which they sought to preserve as private would be free from warrantless intrusion by the Government. Doubtless the limited data transmitted by a beeper was far less revealing than the conversation recorded in *Katz;* the level of intrusion was less severe. Still, as the chemicals containing the transmitter were not contraband or otherwise wrongfully in appellees' possession, the Government had no right to determine their continued presence in the house by use of warrantless electronic surveillance."

*Id.* at 113; *see also United States v. Bailey,* 628 F.2d 938, 940 (6th Cir.1980) ("If the individual legitimately expected the infor-

---

4. While we only discuss Karo's interest in the can of ether, we do not foreclose the possibility that others also may have legitimate expecta-

tions of privacy in the object at the time of transfer.

mation or material the Government acquired to remain private, the act of the Government acquiring that information or material constitutes a search or seizure for fourth amendment purposes."); *United States v. Clayborne,* 584 F.2d 346, 351 n. 3 (10th Cir.1978). *Contra United States v. Bernard,* 625 F.2d 854, 861 (9th Cir.1980). Legitimate expectations of privacy were violated by the monitoring of the beeper while the can of ether with the beeper attached was located in the defendants' private residences and storage lockers. That the can also traveled by motor vehicle and may not have been protected during such travel does not require a different result. The district court correctly concluded that the government's conduct in monitoring the beeper without a valid warrant was unlawful.

### III

■ Evidence seized pursuant to the search warrant for the Taos residence may be suppressed only if that evidence is tainted by the prior illegal conduct of the government. The test for determining whether evidence derived from prior illegal conduct of the government must be suppressed pursuant to the exclusionary rule was set forth in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963):

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

*Id.* at 488, 83 S.Ct. at 417. The government contends that the evidence from the search of the Taos residence was obtained by means independent of the beeper installa-

tion and monitoring. The government argues that during some of the time the beeper was being monitored, the defendants were also under physical surveillance. This argument would be convincing if the government could show that the location of the ether had been determined at all times without the aid of the beeper. This it has not alleged nor could it. The record makes clear that several times during the monitoring of the beeper the government agents lost track of the ether and ascertained its location only by use of the beeper. The claim that the agents could smell the ether while it was located within the residences and the storage lockers is similarly unpersuasive: the agents were in a position to smell the ether only because the beeper had revealed its location.

To the extent that the affidavit filed in support of the search warrant for the Taos residence relied on information supplied by the illegal conduct of the government, there is a link between the prior illegality and the search warrant. The evidence seized from the search of the residence is directly tied to the prior illegal monitoring: without that illegal monitoring the government agents would not have arrived at the Taos residence or known that the ether was within the house. When that information is excised, the search warrant for the Taos residence must fall.

### IV

■ The government contends that even if the warrantless installation and monitoring of the beeper was unlawful, the court's order suppressing the evidence seized from the Taos residence as to all the defendants was in error. The government claims that not all of the defendants have demonstrated the invasion of a legitimate expectation of privacy.

The district court held that each defendant experienced the invasion of a legitimate expectation of privacy and could suppress the evidence seized from the Taos residence.[5] We agree that the Fourth Amend-

---

5. In ruling that all of the defendants could challenge the conduct of the government, the

district judge stated:

ment rights of Karo, Horton, Harley, Steele, and Roth were violated. The beeper was monitored within the Taos residence jointly rented by Steele, Horton, and Harley. One has a legitimate expectation of privacy within one's home, *Mancusi v. De-Forte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968), as well as within a residence shared with others, *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978). Roth did not rent the Taos house with Steele, Horton, and Harley, but he was a visitor at the house when the search warrant was executed. He had resided there for several days and nights and he had unrestricted access to the house. He therefore had a legitimate expectation of privacy in the house. *See Rakas v. Illinois*, 439 U.S. 128, 140, 149, 99 S.Ct. 421, 428, 433, 58 L.Ed.2d 387 (1978); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Robertson*, 606 F.2d 853, 858 n. 2 (9th Cir.1979). The evidence seized from the Taos residence should be suppressed as to Horton, Harley, Steele, and Roth.

 Neither Karo nor Rhodes has demonstrated a legitimate expectation of privacy in the Taos residence; they can seek suppression of the evidence seized from that residence only if they can demonstrate that that evidence is tainted by prior illegal conduct violating their rights.

Karo's right to own and possess the ether without the presence of electronic devices was violated by the illegal installation. The installation of the beeper is inextricably intertwined with the later illegal monitoring of the beeper, including that monitoring directly tied to the search of the Taos residence. Therefore, the evidence seized from that house is tainted by prior illegality infringing on the rights of Karo, and the suppression order for the evidence seized at that house was correct as to him.[6]

While the district court held that Rhodes could challenge the conduct of the government, the court made no factual findings from which we can review that determination. The record does not establish that the beeper was monitored in any place in which Rhodes had a legitimate expectation of privacy. Rhodes did not establish any possessory interest in the ether violated by the installation of the beeper. Therefore, on the basis of this record, the evidence cannot be suppressed as to Rhodes.

We reverse the district court's suppression of evidence as to Rhodes. In all other aspects, the judgment of the district court is AFFIRMED.

"Now, as far as standing, in my view, the installation of a beeper is a continuing search. It's not just a search when it's put on the can on the loading dock, or wherever, it's a search wherever that can is tracing. And that's the purpose of the whole thing, is to—and as is evident in this case, it did a good job. I say, accordingly, I think each person has standing, has demonstrated standing to challenge, except maybe the Defendant Roth is the only one I have a question about in that regard. Everyone else has demonstrated some connection with, or expectation of privacy where the can was intruded. Some have demonstrated ownership or possession of it. But rather than further complicate the situation, I will just grant the motion to suppress as to all of the Defendants."

**6.** The government, relying on *United States v. Clayborne*, 584 F.2d 346 (10th Cir.1978), claims that a break in the monitoring served to purge the evidence seized of the taint of the primary illegality. The government asserts that this break occurred when it lost contact with the beeper. However, we do not read *Clayborne* to declare that a simple lapse in monitoring would purge searches occurring thereafter from the taint of illegal monitoring occurring prior to the lapse. That would afford too little protection to the right to be free from warrantless beeper surveillance in places protected by the Fourth Amendment. Law enforcement officials could simply create a lapse by periodically turning off the monitoring device; police would have unfettered discretion in determining when to monitor the inside of private residences and how to redress warrantless monitoring. Further, in the instant case the government cannot point to a break between the illegal monitoring of the second storage locker and the Taos house. Consequently, all evidence obtained subsequent to the illegal monitoring of the second storage locker is tainted in any event.