GORSUCH, Circuit Judge,
dissenting.
The court today confronts a number of difficult merits questions and resolves them with great care. I would hold, however, that we lack authority to entertain this appeal. The Supreme Court has instructed that congressionally imposed deadlines for filing a timely notice of appeal, like the one before us, are mandatory, jurisdictional, and not susceptible to equitable tolling. It recently emphasized this point by dismissing even the appeal of a habeas petitioner who filed a late notice of appeal in reliance on a federal court’s mistaken calculation of the applicable deadline. In the case before us, the government urges various (and less persuasive) equitable reasons for permitting its own untimely notice of appeal. But the *1134 government surely should be held no less accountable to congressionally prescribed filing deadlines than a habeas petitioner. Accordingly, I respectfully dissent.
I
A handful of background facts are essential. On April 25, 2006, the district court granted Jose Antonio Cos’s motion to suppress. The next day, the government filed a motion to reconsider, pursuing, as it had previously, the argument that Feather Ricker had actual and apparent authority to authorize the government’s search. Before the district court was able to rule, the government filed, on May 1, 2006, a “supplemental motion to reconsider.” In this pleading, the government raised two new arguments. First, it asked the district court to reconsider the applicability of United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The district court had distinguished Matlock from this case on the basis that the officers here did not know children were in the apartment at the time of their entry. In its motion to reconsider, the government cited record evidence suggesting the officers did have such knowledge. Second, the government asked the court — for the first time — to consider the potential application of the good-faith exception to the exclusionary rule.
Mr. Cos moved to strike the government’s supplemental motion, expressing, among other things, a concern that the government was trying to extend the time for filing its notice of appeal unilaterally by introducing new arguments for reconsideration seriatim. On May 4, 2006, the district court denied Mr. Cos’s motion to strike, indicating that “there is no sound reason for the Court not to consider” the government’s good faith argument; it further indicated that, if the government was indeed seeking to extend the deadline for its notice of appeal as Mr. Cos charged, it was proceeding “at its own risk.”
Finally, on May 17, 2006, the district court ruled on the government’s motion and supplemental motion to reconsider. The court granted the government’s motion in part solely to clarify that the officers knew children were present at the time they entered the apartment and to supplement its distinction of Matlock, thus responding on the merits to one of the government’s supplemental arguments for reconsideration. In all other respects, however, the district court expressly denied the relief sought and held it would not vacate its controlling April 25, 2006, order granting Mr. Cos’s motion to suppress “because the United States has not set forth a sufficient ground for taking such a step.” Mem. Op. at 8; see also id. at 29 (“The Court will not vacate its Memorandum and Order granting the motion to suppress.”).
With specific reference to the government’s argument for a good-faith exception to the application of the exclusionary rule, the district court refused to entertain it on the basis that it appeared in only two sentences in a supplemental filing and was not developed by the government: “To consider such an argument at this late date, especially when the United States fails to explain in its supplemental motion why the exception applies to this case, would be unfair to Cos and promote a waste of judicial resources in allowing parties a second chance to argue that which they should have raised the first time.” Id. at 27-28. Indeed, the district court made this point very clear, stating in a bolded, capitalized heading: “THE COURT WILL NOT ADDRESS THE GOOD-FAITH EXCEPTION.” Id. at 27. After holding that it would not rule on the good-faith issue, the district court added its view that the exception did not “seem to apply” on its own terms anyway and indicated that “[i]f the United States truly believes that the good-faith exception may save the evidence from exclusion, it may file a motion setting forth its reasons with *1135 more particularity and specificity.” Id. at 29 (emphasis added).
On May 18, 2006, the government filed what it concedes was, and describes as, a second motion for reconsideration, providing a detailed argument about the applicability of the good-faith exception. See Gov’t Br. at 4 (“The Second Motion to Reconsider Raised A New Argument”); id. at 7 (discussing “second motion to reconsider”). On June 9, 2006, after a hearing, the district court entered an order denying the government’s second motion. Twenty days later, on June 29, 2006, the government filed its notice of appeal.
II
Congress has governed by statute our jurisdiction over appeals taken by the United States from orders suppressing evidence, providing in pertinent part that “[t]he appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.” 18 U.S.C. § 3731. We have previously held this deadline to be jurisdictional in nature. See United States v. Martinez, 681 F.2d 1248, 1254 (10th Cir.1982).[1] It is settled law that, when a party chooses to file a motion to reconsider, the deadline for filing a notice of appeal begins to run from the date of the order denying the motion. See United States v. Ibarra, 502 U.S. 1, 6-7, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). But it is equally settled in this circuit that a second or subsequent motion to reconsider has no effect on this calculus and will not toll the filing deadline. See United States v. Marsh, 700 F.2d 1322 (10th Cir.1983). As we have explained, a party “is not entitled to two bites, so to speak.” Id. at 1324. While the federal rules and longstanding practice recognize the propriety of an extension of time when an initial motion for reconsideration is pending, see id. at 1325, “no provision is made for additional consideration” in cases where a “double effort [i]s plain.” Id. “[Successive tolling of the appeal period is not allowed.” Id. (quoting United States v. Rothseiden, 680 F.2d 96, 98 (11th Cir.1982)); accord Glinka v. Maytag Corp., 90 F.3d 72, 74 (2d Cir.1996) (citing Marsh and collecting cases from the First, Fifth, Sixth, Seventh, Eighth, and D.C. Circuits). As our sister circuit has put the point: “The interest of finality requires that parties generally get only one bite at the [motion for reconsideration] apple for the purposes of tolling the time for bringing an appeal.” Charles L.M. v. Ne. Indep. Sch. Dist., 884 F.2d 869, 871 (5th Cir.1989).[2]
Interpreting a similarly worded statute, 28 U.S.C. § 2107(c), which governs the time to appeal from civil decisions of the district courts, the Supreme Court in Bowles v. Russell, — U.S. -, 127 S.Ct. 2360, 2362, 168 L.Ed.2d 96 (2007), recently underscored what it means to recognize such deadlines as “jurisdictional.” After the district court’s denial of his writ of habeas corpus, Keith Bowles, the inmate-petitioner, had 30 days within which to file *1136 a notice of appeal. Mr. Bowles failed to do so but moved to reopen the period during which he could file his notice of appeal pursuant to Rule 4(a)(6) of the Federal Rules of Civil Procedure, which, subject to certain conditions, allows district courts to extend the filing period for 14 days from the day the district court grants the order to reopen. The district court granted Mr. Bowles’s motion, but, rather than extending the filing period by 14 days, the court gave him 17 days to file his notice of appeal. In reliance on the district court’s instruction, Mr. Bowles took 16 of the 17 days afforded him.
The Supreme Court held Mr. Bowles’s appeal untimely, stating that Mr. Bowles’s reliance on an (erroneous) direction of the district court mattered not at all. The filing day deadline, the Court held, was jurisdictional and mandatory in nature and no equitable consideration could overcome it — not even reliance on express, if erroneous, judicial direction. “If rigorous rules like the one applied today are thought to be inequitable,” the Court held, it is “Congress” and not the judiciary that “may authorize courts to promulgate” exceptions softening their effect. Bowles, 127 S.Ct. at 2367.
Applying these principles to the case before us, I would hold the government’s appeal untimely. The 30-day appellate clock began ticking, to my mind, on May 17, 2006. It was then that the district court denied the government’s first motion to reconsider as well as its supplemental motion to reconsider. To be sure, the district court invited the government to file a second motion to reconsider, but there ought to be no question that the court rejected the government’s first (and supplemental) motion. The May 17, 2006 order, after all, (1) specifically refused to entertain the government’s good-faith argument; (2) denied reconsideration in pertinent part; (3) refused to vacate the court’s existing final judgment; (4) invited the government not to file a supplemental brief on good faith, but a new motion. On top of all this, (5) the government undér-stood its subsequent, May 18 filing amounted to just such a successive, second motion for reconsideration, and (6) far from being assured it was on terra firma like Mr. Bowles, the government was expressly warned by the district court that it proceeded at its “own risk” with respect to filing a timely notice of appeal. With the district court’s denial of the government’s initial (and supplemental) motion for reconsideration, the government had until June 16, 2006 (at the latest) to file its notice of appeal. Because it did not do so until June 29, 2006, its appeal is untimely and we are without jurisdiction to hear it.
In response to all this, the government, unsurprisingly, does not argue that the court’s May 17, 2006 order was only a preliminary or tentative ruling on its initial and supplemental motions. Rather, the government readily acknowledges that the district court denied these motions in relevant part and that it was forced to file a second motion on May 18.[3] Before us, the government presses only equitable excuses *1137 for its delay in filing a notice of appeal. Specifically, the government (1) stresses its belief that its second motion for reconsideration raised important new arguments; (2) notes that it had the permission of the district court to file a second motion for reconsideration; (3) seeks to assure the court that its successive motion was not interposed for reasons of delay; and (4) argues that waiting to start the appellate clock ticking until a final motion for reconsideration can be resolved facilitates judicial economy by avoiding piecemeal appeals. See Gov’t Br. at 3-9.
None of the government’s equitable arguments may be entirely without appeal. But each contains obvious weaknesses,[4] and none is remotely as strong as Mr. Bowles’s equitable argument that he had relied on the word of a federal court in delaying his notice of appeal. Even more to the point, however, the Supreme Court has unequivocally directed that jurisdictional filing deadlines are not susceptible to alteration based on precisely the sort of equitable considerations that the government urges on us, explaining that “this Court has no authority to create equitable exceptions to jurisdictional requirements.” Bowles, 127 S.Ct. at 2366. And whatever else one might think about this command, it surely must be susceptible to the Rule of the Goose and Gander and thus apply no less forcefully to the government than the habeas petitioner. Accordingly, I respectfully dissent.

. Rule 4(b)(4) of the Federal Rules of Appellate Procedure authorizes a district court to extend the time to file a notice of appeal under certain circumstances. Whether Rule 4(b)(4) may trump or supplement Section 3731 may be a nice question, see United States v. Sasser, 971 F.2d 470, 473-75 (10th Cir.1992), but it is one we need not address as the government does not contend that the conditions necessary for application of Rule 4(b)(4) are met here. Id.

. Of course, as the court today indicates, district courts are free, if they wish, to entertain further motions for reconsideration. See Maj. Op. at 1125 n. 2. The only question for us is when the time for a notice of appeal begins to run, and it is long settled that only an initial motion for reconsideration will toll that period; otherwise, of course, a party might delay appellate review indefinitely simply by filing motion after motion seeking reconsideration. Id.

. The cases cited by the court for its conclusion otherwise seem to me inapplicable. For example, in United States v. Karo, 710 F.2d 1433, 1436 (10th Cir.1983), rev'd on other grounds, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), we simply held that an oral ruling on a motion to suppress was not a final, appealable order when the district court expressly indicated that a formal, written ruling would be forthcoming. In S. Ute Indian Tribe v. Amoco Prod. Co., 2 F.3d 1023, 1029 (10th Cir.1993), likewise, the district court signed a pre-prepared case management order but expressly "declared that it was doing so preliminary and would enter a more detailed written order.” See also Fiataruolo v. United States, 8 F.3d 930, 937 (2d Cir.1993) (holding that a written judgment for the plaintiff was final even when the district court had yet to specify a dollar award); O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d *1137 1204, 1208-09 (10th Cir.1992) (the district court's contempt order specified that plaintiffs could discharge the contempt by meeting certain conditions and expressly indicated that the court would consider further argument at a later date on that issue); Taylor v. Cont’l Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1231 n. 2 (3d Cir.1991) (holding that the time for appeal does not run from a vacated district court order). By contrast, even the government does not dispute that the district court in this case denied its initial (and supplemental) motion to reconsider in relevant part, thus necessitating a second motion.

. For example, while the government did raise new points in its May 18, 2006, filing in support of the application of the good-faith exception, there is no reason why it could not have raised those points much earlier in the proceedings, even during the pendency of the original motion to suppress. While the district court permitted the government to file yet another motion to reconsider, it firmly rejected the government's first and supplemental motions for reconsideration and had long made clear the government proceeded at its own risk with respect to noticing a timely appeal. As to judicial economy, one can make arguments both ways; as the Supreme Court noted in Bowles, a firm 30-day rule encourages “clarity'' for practitioners. Bowles, 127 S.Ct. at 2367.